# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS

In the matter of:

GEORGE IBRAHAM,

       Plaintiff,

v.

DRAPER & KRAMER, INC.; and
HARBOR POINT CONDOMINIUM
ASSOCIATION,

       Defendant.

Case Number: 18-cv-3309

## **COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, GEORGE IBRAHAM ("Plaintiff"), by and through his attorney CHRISTINA ABRAHAM, complaining of Defendants DRAPER & KRAMER, INC. and HARBOR POINT CONDOMINIUM ASSOCIATION, for violations of Title VII of the Civil Rights Act of 1964, as amended. In support thereof, Plaintiff alleges as follows:

### Introduction

1. Plaintiff was hired as a Garage Hiker on or about September 26, 2014. Plaintiff was subjected to disparate treatment by his employer, and harassment by another employee. Plaintiff reported the harassment to his employer. Not only was no action taken to stop the harassment, but Plaintiff began receiving retaliatory treatment by his supervisors. Plaintiff is one of only three (3) non-African American employees at the Harbor Point location. He believes that he has been discriminated against and harassed because of his race and national origin, and retaliated against for having complained of the harassing behavior by another employee, and

1

having complained of disparate treatment. On December 7, 2017, Plaintiff informed his employer that he was filing a charge of discrimination with the Equal Employment Opportunity Commission. Four (4) days later, he was discharged for an incident alleged to have occurred one month prior, and for which he was not interviewed or even informed that a complaint had been made against him.

**Jurisdiction and Venue**

2. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") that was perfected on January 24, 2018. On February 8, 2018, the EEOC issued to Plaintiff a Notice of Right to Sue.

3. Jurisdiction is proper under 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, or treaties of the United States.

4. Venue is proper under 28 U.S.C. § 1391, as Defendants are residents of this judicial district and a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

**Parties**

5. Plaintiff George Ibraham is a former employee of Defendants. Plaintiff was hired as a Garage hiker and assigned to work at Defendant until his termination on December 11, 2017. At all relevant times, Plaintiff worked and resided in Cook County, Illinois.

6. Defendant Draper and Kramer, Incorporated, is a property and financial services company that manages real estate. Draper and Kramer, Inc. is headquartered in Chicago, Illinois.

7. Defendant Harbor Point Condominium Association is a condominium association located at 155 N. Harbor Drive, Chicago, IL 60601.

## Factual Allegations

8. Plaintiff is a Middle Eastern male of Assyrian ancestry. His national origin is Syrian and his race is White.

9. Plaintiff was hired by Defendants on or about September 26, 2014 as a garage hiker.

10. Employees at Defendant are represented by the Teamsters Local 727 Union ("Union") and are covered by a Collective Bargaining Agreement ("CBA") that governs the terms of employment.

11. Plaintiff was directly supervised by the Garage Manager, Dorothy Williams, and also by the Property Manager, Tiffani Sterdivant.

12. Plaintiff experienced numerous shortages in pay that other employees did not experience.

13. In early August, 2017 Plaintiff reported to the Union the shortages in pay and also reported that he was not receiving regular breaks.

14. On or about August 15, 2017, while on duty, Plaintiff's vehicle was vandalized while parked in the Defendants' garage. Plaintiff has video footage of another employee of Defendants walking closely around the vehicle. Shortly thereafter, Plaintiff discovered that there were scratch marks all around his vehicle.

15. Plaintiff reported the vandalism to the Garage Manager, Dorothy Williams, to no avail. Plaintiff then reported the incident to his Union.

16. On August 22, 2017, Plaintiff began receiving schedules in which he worked night shifts alone on two nights per week.

17. On August 25, 2017, because nothing had been done regarding his report of vandalism, Plaintiff spoke to the Property Manager, Tiffani Sterdivant. Ms. Sterdivant indicated to Plaintiff that the employer would pay for the damage to his vehicle.

18. Upon information and belief, both the Garage Manager, Dorothy Williams, and the Property Manager, Tiffani Sterdivant, are employees of Defendant Draper & Kramer, Inc.

19. On or about August 30, 2017, while working the night shift, Plaintiff became very ill with kidney stones and needed medical attention. Plaintiff contacted Ms. Sterdivant and advised her that he needed to go to the emergency room. Plaintiff was told by Ms. Sterdivant that he could not leave until a replacement for him arrived, although there was another person on duty at the time. Ms. Sterdivant explained to Plaintiff that he could not leave his co-worker alone. He was also told by Ms. Sterdivant that management needed to approve overtime for another employee to come in early and relieve Plaintiff of duty. Plaintiff remained on duty through his illness because he feared that if he left, he would be subjected to disciplinary action.

20. Thereafter, Plaintiff was routinely scheduled to work the night shift alone.

21. On September 6, 2017, Ms. Sterdivant informed Plaintiff that the employer would not reimburse Plaintiff for the damage done to his vehicle.

22. On September 12, 2017, Plaintiff contacted Michelle Kamenjarin, the Assistant Vice President for Defendant Draper & Kramer, regarding the vandalism.

23. On September 13, 2017, Ms. Kamenjarin responded by stating that the company could not determine that the damage to Plaintiff's vehicle was done on company property, and advised him to go to the police. Later, and without explanation, the employer changed its position again and agreed to pay for the damage done to Plaintiff's vehicle.

24. Upon information and belief, no investigation nor disciplinary action resulted from Plaintiff's complaining of the vandalism.

25. On or about October 4, 2017, Plaintiff filed an incident report complaining that the Garage Manager, Ms. Williams, had intentionally bumped into him at the clock-in station in the employee breakroom. A few days later, the Property Manager, Ms. Sterdivant, met with Plaintiff and stated that she had interviewed two (2) employees that were allegedly in the breakroom at the time of the incident, and that those employees said they did not see anything happen. Upon information and belief, at least one of the individuals reported to have been present at the time of the incident was not scheduled to work on that day.

26. Plaintiff was regularly made to work through his lunch breaks and was not permitted to leave company property during breaks. Plaintiff was instructed by Ms. Williams that he could not leave company property during his breaks. Plaintiff was told that if he left company property during his break, he would be disciplined. At the same time, other employees were not told that they could not leave company property during their breaks and were permitted to leave freely during breaks. This occurred throughout the course of his employment with Defendants.

27. Plaintiff was also given a disparately heavier work load than other similarly-situated employees. If he did not complete his workload, Plaintiff would be subjected to discipline.

28. Upon information and belief, it is standard practice to require at least two (2) employees to cover a shift for reasons involving safety, covering for breaks and efficient work management. During these shifts, Plaintiff was not able to take any of the breaks required by the CBA between Defendants and Plaintiff's union, but nonetheless his pay was deducted to reflect these regular shift breaks. Further, working the night shift alone made Plaintiff feel extremely unsafe at work.

29. On November 1, 2017, Plaintiff was placed on unpaid suspension for five (5) days for "Insubordination and Violation of Association and Garage Rules, Policies and Procedures." Following the vandalism of his vehicle by an employee of Defendants, Plaintiff began parking his vehicle in a different location, near an air pump in the garage. After noticing the same employee go near his vehicle on several occasions, Plaintiff began parking in a parking spot not utilized by any homeowner.

30. When Ms. Sterdivant told Plaintiff that he could not park there anymore because the spot belonged to a homeowner, Plaintiff addressed the continued harassment of the employee that vandalized his vehicle. Ms. Sterdivant then placed Plaintiff on the five (5) day suspension.

31. Ms. Sterdivant further listed two witnesses to the alleged insubordination: the employee that Plaintiff believes vandalized his vehicle, and that employee's relative. In fact, neither of these individuals was present during the alleged incident. Plaintiff denied that he yelled during the incident, but does admit that he complained that he did not feel safe parking his vehicle in the designated employee spots. One witness' statement was not considered by Defendants: the Doorman, although he was actually present during the exchange.

32. According to the CBA between Defendants and the Union, an employee may not be given a term of suspension exceeding three (3) days. Plaintiff was also not given any previous warnings and the escalation procedure under the CBA was not followed.

33. Plaintiff filed a grievance with his Union in order to challenge the five (5) day suspension.

34. On November 4, 2017 (three (3) days after the suspension commenced), Ms. Sterdivant informed Plaintiff that Defendants were reducing the term of suspension to three (3) days and instructing Plaintiff to appear for work the next day. By this time, Plaintiff was out of

town and could not return to work immediately. Plaintiff therefore lost the full five (5) work days as a result of the suspension.

35. On November 7, 2017, Plaintiff filed a charge of discrimination with the EEOC. Said charge was perfected on January 24, 2018.

36. On December 7, 2018, Plaintiff was instructed to appear for a meeting with management and a representative from his union. During this meeting, Plaintiff disclosed to management that he was filing a charge of discrimination with the EEOC because he felt that his treatment constituted unlawful discrimination and harassment.

37. On December 11, 2018, Plaintiff was terminated by Ms. Sterdivant. The discharge notice refers to an incident alleged to have occurred approximately one month prior, on November 16, 2017. The discharge notice indicates that Plaintiff was accused of harassing another employee.

38. During the November 16 incident in question, Plaintiff was left without heat during an overnight shift and reported it to management. Management subsequently disciplined the maintenance employee that was responsible for the lack of heat. This employee then confronted Plaintiff, upset that he had been disciplined. Plaintiff denies using any threatening or offensive language. No witnesses other than the complaining employee are listed on the discharge notice.

39. Plaintiff was never informed of the allegation, nor asked what occurred during the incident, until he was notified that he was being terminated on December 11, 2017.

40. Plaintiff was also not compensated for four (4) weeks of accrued vacation time that he never took and should have received wages for pursuant to the terms of the CBA. Plaintiff estimates that $2840 are owed to him for this time.

41. As a result of his termination, Plaintiff has incurred emotional and actual damages.

**Count I – National Origin Discrimination**

42. Plaintiff reasserts and realleges all previous paragraphs as if fully incorporated herein.

43. Defendants subjected Plaintiff to disparate treatment in the manner in which they treated and terminated Plaintiff. Other similarly situated employees were not subjected to the same treatment.

44. Defendants violated Title VII of the Civil Rights Act of 1964 for discrimination on the basis of national origin.

## Count II – Race Discrimination

45. Plaintiff reasserts and realleges all previous paragraphs as if fully incorporated herein.

46. Defendants subjected Plaintiff to disparate treatment in the manner in which they treated and terminated Plaintiff. Other similarly situated employees were not subjected to the same treatment.

47. Defendants violated Title VII of the Civil Rights Act of 1964 for discrimination on the basis of race.

## Count III – Hostile Work Environment

48. Plaintiff reasserts and realleges all previous paragraphs as if fully incorporated herein.

49. Defendants' excessive disciplining of Plaintiff and repeated violations of the CBA created a hostile work environment for Plaintiff. Further, Defendants' failed and refused to protect Plaintiff from employees that engaged in harassment of him, including the vandalism of his vehicle and harassment after Plaintiff had complained about having no heat.

50. Defendants' conduct created a hostile work environment for Plaintiff, in violation of Title VII of the Civil Rights Act of 1964.

## Count IV – Retaliation

51. Plaintiff reasserts and realleges all previous paragraphs as if fully incorporated herein.

52. Plaintiff engaged in protected activity when he complained of vandalism and other forms of disparate treatment and harassment by Defendants and their employees. Plaintiff was also engaged in protected activity when he notified his employer that he was filing a charge of discrimination with the EEOC.

53. Defendant retaliated against Plaintiff for engaging in the protected activity when it excessively disciplined, failed to protect him from the harassment of other employees, and discharged him shortly after learning that he was filing a charge of discrimination with the EEOC.

## Count V – Breach of Union Contract

54. Plaintiff reasserts and realleges all previous paragraphs as if fully incorporated herein.

55. Defendants violated the CBA when it discharged Plaintiff for alleged misconduct, and failed to adhere to the terms of the CBA discharge and discipline procedures.

56. Defendants further violated the CBA in calculating Plaintiff's owed vacation pay and other amounts that may be owed to him.

## Conclusion and Prayer for Relief

WHEREFORE, Plaintiff George Ibraham respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, awarding:

a. Actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Costs;

e. Attorney's fees; and

f. Such other relief as the Court deems just and equitable.

        Respectfully submitted,
        GEORGE IBRAHAM
        Plaintiff


        _____/s/Christina Abraham_____
        By:   Christina Abraham
              Attorney for Plaintiff

May 9, 2018

Attorney No. 6298946
Christina Abraham, Esq.
Attorney for Plaintiff
161 N. Clark Street, Suite 1600
312-588-7150